UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
                                    )
**UNITED STATES**                   )
                                    )
     **v.**                         )
                                    )   Criminal Action No. 14-10201-DJC
**ERIC MCPHAIL and**                )
**DOUGLAS PARIGIAN,**               )
                                    )
     **Defendants.**                )
                                    )
_____ )

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **May 12, 2015**

### I.     Introduction

Defendants Eric McPhail ("McPhail") and Douglas Parigian ("Parigian") have moved to dismiss the First Superseding Indictment ("indictment"), D. 38, against them. D. 40, 50, 52, 55. Having considered the motions, the supporting memoranda, the government's opposition and having heard oral argument, D. 56, the Court DENIES the motions.

### II.    Factual Background

The Court draws this summary from the factual allegations in the indictment.

McPhail had a close relationship with Person A, an executive at American Superconductor Corporation ("AMSC"), a publicly traded corporation, between 2004 and 2011. D. 38 at 1-2. By in or about 2009, McPhail and Person A had a history, pattern and practice of sharing professional and personal confidences. Id. at 3. The indictment alleges that McPhail owed Person A a duty of trust and confidence and that McPhail reasonably should have known that Person A's communications were meant to be kept in confidence. Id. at 2-3. The indictment

1

alleges that despite this knowledge, and in violation of his duty to Person A, beginning in or about July 2009, McPhail used email and other means to communicate material, nonpublic information about AMSC's quarterly earnings, among other business activities ("inside information") to his friends, including Parigian. Id. at 2-4. The indictment alleges McPhail did so with the intent that his friends profit from buying and selling AMSC shares or options on such shares on the basis of the inside information. Id. at 3.

Parigian was aware of McPhail's relationship with Person A and that he was an executive at AMSC. Id. at 4. The indictment alleges that Parigian conspired to profit by buying and selling AMSC shares and options on the basis of material, nonpublic information received from McPhail, who had obtained the information from Person A. Id. at 2. Parigian knew or should have known he received the inside information in violation of a fiduciary or similar duty and that it was material and nonpublic information. Id. at 3. The indictment also alleges that Parigian knew that McPhail expected to receive and received a benefit from disclosing the inside information to Parigian. Id. Based upon the inside information, Parigian traded AMSC shares and options and profited as a result. Id. at 3.

As to Count III against Parigian, the indictment further alleges that on or about May 10, 2012, Parigian knowingly and willfully made materially false, fictitious and fraudulent statements and representations to FBI agents investigating the insider trading matter. Id. at 15. Specifically, Parigian told agents he did not receive stock tips or other inside information about AMSC, that he did not know other individuals who invested in AMSC stock and that he did not know anyone who worked for AMSC, when, as alleged, he knew these statements to be false. Id.

## III. Procedural History

The government has charged McPhail and Parigian with one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371, D. 1 at 12 (Count 1) and securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff(a), D. 1 at 13 (Count 2). Additionally, Parigian is charged with making false statements to a federal agent in violation of 18 U.S.C. § 1001(a)(2), D. 1 at 15 (Count 3). Parigian and McPhail have moved to dismiss on the basis that the insider trading allegations in the indictment do not constitute a crime. D. 40, 50. Parigian also contends that dismissal of the indictment is warranted because Counts I and II amount to selective prosecution of him. D. 41. McPhail also separately moves for dismissal alleging misuse of the grand jury process. D. 52. On January 26, 2015, Parigian moved to dismiss the indictment on the same grounds. D. 55. The Court has now heard oral argument on the pending motions. D. 56.

## IV. Discussion

"When grading an indictment's sufficiency, [the court] look[s] to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution of the same offense." United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011) (noting that "in the ordinary course of events, a technically sufficient indictment handed down by a duly empaneled grand jury 'is enough to call for trial of the charge on the merits'") (quoting Costello v. United States, 350 U.S. 359, 363 (1956)). The defendants carry a heavy burden in moving to dismiss the indictment, as "[a] court should exercise its authority to dismiss cautiously, since to dismiss an indictment 'directly encroaches upon the fundamental role of the grand jury.'" United States v. Thomas, 519 F. Supp. 2d 141, 143-44 (D. Me. 2007) (quoting Whitehouse v. U.S. Dist. Court,

53 F.3d 1349, 1360 (1st Cir. 1995)). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defendant and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Cianci, 378 F.3d 71, 81 (1st Cir. 2004) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)); see Fed. R. Crim. P. 7(c)(1).

### A. The Indictment Properly Alleges Criminal Acts as to Both Defendants

The indictment here alleges all of the essential elements of the conspiracy and insider trading charges alleged in Counts I and II, respectively, against both McPhail and Parigian, and the Defendants' arguments to the contrary are not persuasive. Here, the allegations in the indictment rest upon a misappropriation theory of insider trading. These allegations state a crime, even in light of the persuasive weight of the Second Circuit's recent decision in United States v. Newman, 773 F.3d 438 (2d Cir. 2014).

*1. Misappropriation Insider Trading*

Whereas "[u]nder the 'traditional' or 'classical theory' of insider trading liability, § 10(b) and Rule 10b–5 are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information," under a misappropriation theory "a fiduciary's undisclosed, self-serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information." United States v. O'Hagan, 521 U.S. 642, 651-52 (1997). Specifically, an individual "violates § 10(b) and Rule 10b–5[ ] when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information." Id. at 652.

4

"To establish liability under the misappropriation theory, the SEC must show that [an individual] communicated material nonpublic information, with scienter, in violation of a fiduciary duty [owed to the principal]." United States Sec. & Exch. Comm'n v. Rocklage, 470 F.3d 1, 7 (1st Cir. 2006). The Second Circuit held in United States Sec. & Exch. Comm'n v. Obus, 693 F.3d 276, 289 (2d Cir. 2012), that to establish the liability in a chain of misappropriation, the government must allege that "(1) the tipper breached a duty by tipping confidential information; (2) the tippee knew or had reason to know that the tippee improperly obtained the information (i.e., that the information was obtained through the tipper's breach); and (3) the tippee, while in knowing possession of the material non-public information, used the information by trading or by tipping for his own benefit."

In its recent ruling in Newman, the Second Circuit vacated an insider trading conviction, holding that the evidence established only that the individuals involved had known each other for years, sought career advice from one another, and that several defendants were "family friends" who met through church and "occasionally socialized together." Newman, 773 F.3d at 452. The Court held that the "scant" evidence of personal gain, the strongest of which was the provision of career advice among individuals who attended the same business school, could not constitute a quid pro quo exchange, in part because if such provision qualified as benefit, "practically anything would qualify." Id.

In the Defendants' view, the Second Circuit's observation that "[t]he elements of tipping liability are the same, regardless of whether the tipper's duty arises under the 'classical' or the 'misappropriation' theory," Newman, 773 F.3d at 446, precludes their culpability since there are no allegations that Person A, the corporate insider, received any benefit. Defendants also argue

5

that McPhail cannot be a tipper because he cannot be considered an insider, and, even if McPhail could be so considered, there is no allegation that McPhail received a benefit.

It is, however, the government's view of Newman that is most consistent with the purpose of the misappropriation theory and pre-Newman law in this Circuit about the elements of a misappropriation theory of insider trading. That is, "the misappropriation theory of insider trading targets the misuse of corporate information by outsiders," and "the misappropriation theory does not require a 'fiduciary' or business relationship between the corporate source and the misappropriator; a personal relationship can suffice." D. 44 at 6. In O'Hagan, the still governing Supreme Court case regarding the misappropriation theory, a law firm attorney, an "outsider" to the bidding company, traded upon inside information about a proposed tender offer. The Supreme Court held that "he was liable under a misappropriation theory because he had deceived both his law firm and its client: he had pretended to be loyal to them while secretly converting information obtained from them into personal gain." Rocklage, 470 F.3d at 7 (discussing O'Hagan, 521 U.S. at 653-55). In applying this theory in Rocklage, the First Circuit observed that the SEC must show the communication of "material nonpublic information, with scienter, in violation of a fiduciary duty she owed to [the insider]." Id.

Here, as in the seminal misappropriation case, O'Hagan, the source of the material, nonpublic information (there, the law firm client; here, Person A) is an unknowing source and participant in the chain of information to the tipster (there, the law firm attorney; here, McPhail). Under this theory, a personal benefit need not be alleged to inure to the benefit of the unknowing participant, the source of the inside information.[1] To the extent that the Defendants are

---

[1] The cases cited by the Defendants, In the Matter of Gregory T. Bolan, Jr. and Joseph C. Ruggieri, File No. 3-16178, SEC Release No. 2309 (February 12, 2015), and two recent, post-Newman cases out of the Southern District of New York, do not require a different result.

alternatively arguing that the indictment must allege that the tipster (McPhail) must receive a personal benefit and/or that the tippee (Parigian) knew that McPhail would receive, or expected to receive such benefit, the indictment here alleges both. D. 38 at ¶¶ 9(e), 20-22, 26

It is also clear that such relationship, between an insider and the tipster, need not be a fiduciary one *per se*, but a fiduciary-like relationship. United States v. McGee, 763 F.3d 304, 316 (3d Cir. 2014) (holding that "Rule 10b5–2(b)(2) is a valid exercise of the SEC's rulemaking authority" and concluding that the relationship of two individuals who developed a close relationship through their participation in Alcoholics Anonymous rose to the "requisite relationship of trust or confidence for misappropriation liability"). SEC Rule 10b5-2(b)(2) provides, "[f]or purposes of this section, a "duty of trust or confidence" exists in the following circumstances, among others:

> (2) Whenever the person communicating the material nonpublic information and the person to whom it is communicated have a history, pattern, or practice of sharing confidences, such that the recipient of the information knows or reasonably should know that the person communicating the material nonpublic information expects that the recipient will maintain its confidentiality.

17 C.F.R. § 240.10b5-2(b)(2). Such a relationship is alleged here as between the source of the information, Person A, and McPhail. D. 38 at ¶ 9(a). Given the nature of their close relationship and history, pattern and practice of sharing confidences, it is alleged that McPhail owed Person A a duty of trust and confidence and that he reasonably should have known that Person A's communications about AMSC should be kept in confidence. D. 38 at 2-3. Such is sufficient allegation as to the nature of the fiduciary-like relationship between the source and the tipster. See United States Sec. & Exch. Comm'n v. Nothern, 598 F. Supp. 2d 167, 175-76 (D. Mass. 2009) (ruling that an express agreement to maintain confidentiality could satisfy the fiduciary-like relationship requirement, noting also that the court was "free to determine that a similar

7

relationship of trust and confidence exists even in the absence of a scintilla of superiority or dominance") (internal quotation omitted).

Much of the rest of the Defendants' argument concern the strength of the government's case—e.g., whether Person A and McPhail had the requisite relationship; whether the information provided by Person A was material, nonpublic information. Since the Court's review of a motion to dismiss an indictment must be confined to the face of the indictment and, having concluded that the indictment sufficiently alleges crimes against the Defendants under Counts I and II, the Court must decline the invitation to test the strength of the government's factual allegations against the Defendants.

### B.  There are No Other Grounds to Dismiss the Charges against the Defendants

Parigian claims selective prosecution because the indictment did not charge other individuals, other golfing buddies of McPhail's, who traded on AMSC stock. D. 41 at 21-22. "An improper selective prosecution arises when a defendant has been singled out for prosecution when others similarly situated have not been prosecuted and the prosecutor's reasons for doing so were impermissible." United States v. Graham, 146 F.3d 6, 9 (1st Cir. 1998) (quotations omitted). "[F]ederal prosecutors must be afforded substantial discretion not only in determining whether to prosecute a suspected violation of federal law but also in deciding what charges should be lodged." United States v. Lewis, 517 F.3d 20, 25 (1st Cir. 2008). Even assuming, *arguendo*, that the other friends of McPhail's can be properly characterized as similarly situated to Parigian, Parigian has not shown that the government's reason for indicting him, and not others, was impermissible. This is particularly true where it is alleged that Parigian realized a profit of approximately $267,881 and avoided losses of approximately $10,800 by trading on the inside information provided by McPhail. D. 38 at ¶ 49. That is, the government's explanation

that it is prosecuting Parigian because, among other things, it "selected the target who profited most from McPhail's tips," D. 44 at 17, cannot be said to be an impermissible basis for the exercise of prosecutorial resources. Even as Parigian argues that the relative profit is an "arbitrary and capricious classification," D. 41 at 22, this Court cannot agree as it is, at least, an indicator (although, sometimes, an imperfect one) of relative culpability. Moreover, Parigian's profit from the inside information is not the government's only proffered reason for his prosecution. The government also cites his false statements to federal law enforcement officers about his insider trading, the facts that give rise to Count III against him. These bases are not impermissible bases for charging Parigian and not others.

To the extent that the Defendants press a motion to dismiss on the grounds that the government misused the grand jury process to amend the original indictment, D. 52, 55, the Court finds that the Defendants have not borne the "heavy burden" of overcoming the presumption of regularity regarding such process. See United States v. Worthy, 755 F. Supp. 2d 226, 234 (D. Me. 2010) (quoting United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001)).

**V.     Conclusion**

For all of the aforementioned reasons, Defendants' motions to dismiss, D. 40, 50, 52, 55 are DENIED.

**So ordered.**

/s/ Denise J. Casper
U.S. District Judge

9